IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

TYRONE JOSHUA, )
)
Petitioner, )
)
vs. ) Case No.   4:13-cv-0862-AKK-TMP
)
DEWAYNE ESTES, Warden; )
and the ATTORNEY GENERAL OF )
THE STATE OF ALABAMA, )
)
Respondents. )

## **MEMORANDUM OPINION**

On October 16, 2014, the magistrate judge filed his Report and Recommendation, recommending that this petition for *habeas corpus* relief filed pursuant to 28 U.S.C. § 2254 be denied and dismissed.  Doc. 15.  On October 21, 2014, the respondents filed objections, doc. 16, on the basis that the magistrate judge had not addressed a claim relating to "good time" credits, which the Petitioner raised by filing a separate petition, doc. 11, and which the court construed as a motion to amend, doc. 12.  The respondents correctly pointed out that, pursuant to *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992), the court must address all claims in order to resolve the petition.  This Memorandum Opinion therefore addresses the sentence calculation claim, and also addresses Petitioner's objections to the Report and Recommendation.

1

## **DISCUSSION**

A. <u>Sentence Calculation</u>

In his amended petition, Petitioner alleges that he is "challenging the way that [his] goodtime credits are being calculated and credited towards [his] sentence." Doc. 11 at 5. He requests relief in the form of an order directing the Department of Corrections to "give the petitioner any and all good time credits that has [sic] not been credited to petitioner and to show cause as to why the credits should not be given to the petitioner whereas he was sentenced under the old law." *Id.* at 8. In response, the respondents contend that Petitioner's claim for good-time credit is due to be dismissed as unexhausted and as time-barred. Despite receiving an opportunity to respond, Petitioner has failed to rebut this contention. As such, it is undisputed that Petitioner failed to pursue any state remedy, such as a state *habeas corpus* petition, for the alleged loss of good time credits. Therefore, because a state prisoner is only entitled to federal *habeas* relief under Section 2254 if he has first "exhausted the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), Petitioner's petition for habeas relief is due to be denied. *See Medberry v. Crosby*, 351 F.3d 1049 (11th Cir. 2003) (holding that habeas actions under § 2241 have same exhaustion requirement as petitions under § 2254 where prisoner is in custody pursuant to a state judgment)

Alternatively, the claim fails on the merits. As the respondents have shown, the state court sentenced Petitioner in 1978 to two consecutive life sentences. The "old law" provided for Statutory Good Time ("SGT"), by which inmates could receive a day's credit for every two days served.  However, inmates serving life sentences were precluded from receiving SGT credits.  Doc. 24-1.  Moreover, the only other provision for receiving good time credits is under the Incentive Good Time ("IGT") program, which awarded credits based on good behavior, and was a privilege an inmate had to earn.  *Id.*  There is no indication that Petitioner ever received discretionary IGT.  Accordingly, there is no evidence that respondents improperly calculated Petitioner's sentence, and Petitioner's claim is due to be denied.

B.   Actual Innocence

On October 29, 2014, Petitioner filed objections to the Report and Recommendation, contending that he has additional "new reliable evidence" that demonstrates actual innocence. Doc. 17.  The innocence contention is based on Petitioner purportedly learning recently that the victim identified a different man as her assailant in a pretrial lineup.[1]  Petitioner argues that "had the jury known, the

---

1   Petitioner attached to his objections a photograph of five men in a lineup, from where it appears that the witness identified #1 as the assailant.  Petitioner is identified as #4 in the photo array.

jury probably would not have convicted [Petitioner]" and that "there is a probability that reasonable doubt would have been in at least one of the jurors mind [sic] and [Petitioner] would not have been convicted." Doc. 17 at 3. Unfortunately, this argument is unavailing.

In *McQuiggen v. Perkins*, __ U.S. ___, 133 S. Ct. 1924, 185 L. Ed. 2d. 1019 (2013), the Supreme Court made clear that in rare circumstances a showing of actual innocence can overcome the statute of limitations imposed on *habeas* petitioners through AEDPA:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup [v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851 (1995)]; *see House [v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064(2006)] (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S. at 332, 115 S. Ct. 851.

133 S. Ct. at 1928. However, the threshold requirement for a showing of actual innocence remains a substantial one, and "tenable actual-innocence gateway pleas are rare." *Id.* Rather, to invoke the exception to AEDPA's time limitation, a

petitioner must show that it is "more likely than not that *no reasonable juror would have convicted* in the light of the new evidence." *Id.* at 1935 (quoting *Schlup*, 513 U.S. at 327 (emphasis added)).

In this case, while the failure to identify the Petitioner in a lineup could serve to diminish the credibility of the victim's in-court identification, it is not such convincing evidence that *no reasonable juror* could convict. To the contrary, the purported new evidence raises only the possibility of impeachment of the victim's in-court identification and does not positively establish Petitioner's innocence. Indeed, as the Petitioner argues, the identification discrepancy is evidence that *may* have created reasonable doubt in the mind of *at least one* juror. In other words, it is not such compelling evidence that "no reasonable juror" could convict. As such, it does not meet the stringent requirements for an actual innocence claim.

Moreover, Petitioner must also demonstrate that the lineup evidence is actually "new." Although the Supreme Court and the Eleventh Circuit have not defined "new" in the context of the actual innocence gateway, the Fifth Circuit provides some guidance in *Lucas v. Johnson*, 132 F.3d 1069, 1074 (5th Cir. 1998). In *Lucas*, the court evaluated both a free-standing actual innocence claim and a "gateway" claim and set the same evidentiary standard for both. First, the court noted that "much of the evidence alleged by Lucas to be newly discovered is

neither new nor newly discovered, but in its essence and character, was presented, or available to present, to the trial jury." *Lucas,* 132 F.3d at 1074. Next, the court held that to sustain a "new evidence" claim, a petitioner must show that: "(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the defendant's failure to detect the evidence was not due to a lack of diligence; (3) the evidence is material, not merely cumulative or *impeaching*; and (4) the evidence would probably produce acquittal at a new trial."  *Id.* at 1075 n.3 (italics added); *but see  Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003) (taking a broad view of "new" evidence to allow a petitioner to proceed on the basis of evidence he possessed at trial).

   In this case, the lineup evidence is not "new."  Based on the record, Petitioner knew before he signed his confession that the witness had failed to pick him out of the lineup.   Doc. 6-3 at 22.   Therefore, even if he did not have in his possession at the time the documents related to the lineup, he still knew decades ago that the "lady didn't pick [him] [out]."  *Id.*  Put differently, seeing the documents now for the first time does not mean the evidence is "new."

   Alternatively, even if the evidence is "new," Petitioner must still demonstrate "the likely impact of this new evidence on reasonable jurors" in order to prevail.  *Melson v. Allen,* 548 F.3d 993, 1002 (11th Cir. 2008) (overruled on

6

other grounds, 130 S. Ct. 3491 (2010)). In doing so, "[n]ew evidence that merely undermines the state's theory of the case but does not rebut specific jury findings of guilt is insufficient to demonstrate actual innocence." *Buckner v. Polk*, 453 F.3d 195, 200 (4th Cir. 2006). Indeed, as one court has noted, the gateway is not intended to provide a petitioner with a new trial "with all the attendant development of evidence, in hopes of a different result," but instead is an "opportunity for a petitioner, aggrieved by an allegedly defective trial and having inexcusably defaulted the available remedies, to raise such a strong doubt to his guilt that, in hindsight, [the court] cannot have confidence in the trial's outcome." *Weeks v. Bowersox,* 119 F.3d 1342, 1353–4 (8th Cir. 1997). A petitioner meets the threshold requirement only if he persuades the court that, in light of the new evidence, no juror, acting reasonably, would have found him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327. Consequently, to prevail, showing that a reasonable doubt exists is insufficient. Rather, Petitioner must establish that no reasonable juror would have convicted him in light of the "new reliable evidence." *See, e.g., Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005). Moreover, in evaluating Petitioner's claim, "[e]ven if the court, as one reasonable factfinder, would vote to acquit, the court must step back and consider whether the petitioner's evidentiary showing most likely places a finding of guilt beyond a

reasonable doubt outside of the range of potential conclusions that *any* reasonable juror would reach." *Doe v. Menefee*, 391 F.3d 147, 173 (2d Cir. 2004). Put differently, a court may determine that, as factfinder, it would return a verdict of not guilty, yet still reject a petitioner's argument that he is actually innocent. *See, e.g., Lambert v. Blackwell*, 134 F.3d 506 (3d Cir. 1997), *cert. denied*, 532 U.S. 919 (2001). This is because "[t]he demanding nature of the *Schlup* standard ensures that only the 'extraordinary' case will merit review of the procedurally barred claims." *Melson*, 548 F.3d at 1002.

Here, Petitioner's claim of actual innocence rests on his assertion that the victim failed to identify him in a lineup. However, it is unclear whether the witness in fact identified a different person in the lineup because the left margin of the photo array appears to have been obscured from the photocopy. Also, it is not entirely clear that the "#1" notation is the identification of the assailant because the instructions call for the witness to place an "X" in the "corresponding square," and the copy produced to this court does not show any "X" or any "corresponding squares." More importantly, even if the documents support Petitioner's contention that the victim failed to identify him in the lineup, the record is clear that the victim made a voice identification of the Petitioner, and identified Petitioner at the preliminary hearing, and again at the trial. Therefore, the

8

identification lineup documents only amount to impeachment evidence, which is insufficient under the prevailing law to open the actual innocence gateway to allow adjudication of Petitioner's claims. For these reasons, and because Petitioner knew about the identification issue before he pleaded guilty, the court cannot consider the instant petition.

## CONCLUSION

Based on the foregoing, the court is of the opinion that the report is due to be ADOPTED, and the recommendation is ACCEPTED. Having considered herein the Petitioner's claim relating to good time credits, the respondents' objections are MOOT, and Petitioner's objections are due to be and hereby are OVERRULED. Consequently, the petition for writ of *habeas corpus* is due to be DENIED and DISMISSED WITH PREJUDICE. A separate final judgment will be entered.

The Clerk is DIRECTED to mail a copy of this Memorandum Opinion to the Petitioner.

**DONE** the 24th day of February, 2016.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE